153292 Joseph Casagrande v. OhioHealth at all. Arguments not to exceed 15 minutes per side. Mr. Mansell for appellant. Thank you. If you may please the court. Mr. Ascensio. This case is here on cross motions for summary judgment on an interference claim under the FMLA. And also a motion for summary judgment granted on a retaliation claim under the FMLA and is reviewed de novo. Related to the interference claim some of the undisputed facts are Mr. Casagrande took medical leave on November 2nd 2012. At the time he had not yet been at his job for one year. It is undisputed that on December 5th 2012 he had met the requirements of eligibility under the FMLA as he had been there for one year. At that point he then was entitled to FMLA protection. They could have fired him before then. They could have fired him. They could have fired him on December 1st no violation of the FMLA. If there was a legitimate reason. Does the FMLA require that you have legitimate reasons to fire somebody? Well then it would have been well there is case law that talks about whether the FMLA applies if it was in anticipation of his FMLA leave. Whether that applies. But he was an at will employee. Correct he was an at will employee. And he was collecting 70% of his pay on their sick leave program. Is that right? A short term disability. Yes sir. So they could have other than some other law. Correct. But instead they kept paying him and he without either of them knowing it became eligible for FMLA. He became eligible for FMLA. They did not fire him. And he was never really required to get that 70% under the FMLA. Correct. Sounds like they have been pretty generous so far. So go ahead. In the FMLA regulations and the accompanying legislative doctrines talk about that there's situations where an employee may get more leave than he's entitled to under the FMLA if this occurs. But nonetheless they in the amendments changed the regulations and 825.110 allows him to become eligible for FMLA while already on medical leave. But the only thing here that he's that he missed by not by their mistake about the FMLA was his job protection. Isn't that correct? Correct. Because actually he was other than protection for his job he was actually getting more than he would have gotten under pure FMLA leave. Up until mid January. I agree. You don't get paid under FMLA. Isn't that right? That's correct. OK. But you are entitled to job restoration under the FMLA. And I'm saying that's what really was at stake here for him. Right. And that's under the interference is our main claim is that. It's like 30% for three weeks something like that and then the actual pay for a month that he was tendered but didn't cash later. Right. That's the amount of money that we're talking about. Essentially. Whatever harm came from not having the money at hand during that month. From January 18th until February 12th it was 30% of his pay. At February 12th his short term disability ended. And it was 100% of his pay. Right. Did anybody ever sit down and calculate what the loss actually was? I know they came up with a figure that you all disagreed with. Yes. Your Honor in the briefing there is that number and specifically for the period of time from February 27th to March 19th when he was reinstated that number is $2,455.92. Okay. That's on the interference claim. That's related to February 27th until March 19th. Okay. And then there's some value to the fact that he didn't get the check for a while. Yes. Your Honor. Did you ever liquidate those damages? Did you come up with a figure? As to what the harm was for him not having the check for a period of three months the interest or something so to speak. I'm just wondering if whether this is not big stakes here money wise. I'm just wondering did you all have any interaction with our mediation department? We did, Your Honor. And it was unsuccessful? Yes, Your Honor. Okay. It just he's back at work somewhere. Is that not correct? Correct. He's still practicing as an RN. And he's at work somewhere that is not the Ohio Health Facility. Correct. Is that right? And how long was he out of work between the time he was dismissed and the time he got a new job? Less than six months, Your Honor. Okay. Thank you. I have a question about what I thought was an undisputed fact that he was informed that before December, whatever the magic date was, December 5th, December 6th? December 5th, Your Honor. Okay. December 5th. Before that he was told that his job was going to be posted. Yes. His job was going to be posted but it had not yet been filled. So at the time that... But if it's posted, that's notice that he's not that when he comes back he may not be in that job. He may just be in a job. It seems to me like what they were doing, not having a great lawyer perhaps or not having talked to their lawyer, not knowing exactly what they were supposed to be doing. Well, their lawyer may be here in court, Judge Riley. Well, all right. I'm speaking figuratively if you are. What it appears they were trying to do was continue him on 70% until they could figure out a new job for him to take at 100% that wasn't the same job that he had before and that they were on that plan before he ever had any rights under FMLA unless there's this anticipatory thing you're raising that I've never heard of but might well be true. But apart from that, basically at the end of December they're on a track which is pretty generous which is we're going to pay you 70% until we figure out a job other than the one you already had where you can be a practicing nurse. It seems to be what's going on. Where are my facts wrong when I say that? I mean, that's factually uncontradicted, isn't it? He was in Ohio Health, has benefits as part of their compensation. Right, but they're not FMLA required. They're not FMLA required. So whether they're required by a contract or whatever, they're not required by the FMLA. Could I make one observation and that is you're speaking at the end of December and he was qualified for FMLA by then. But in November 8th when he was told he was no longer, that his job is being given to someone else, he knows that that's not the job that they want him to be in. Because they sent him a letter saying it's not. They said your job's going to be posted. So they didn't say your job's filled. Posting it is not filling it. I mean, I know that. Posting it is advertising it, saying we have a job out here. Apply for it. The first time that he was notified that his job was filled was in a letter dated December 11th, 2012, which was after he became FMLA protected. So at that point, if his job is filled, then he's entitled to either go back to that job or a substantially equivalent job at the time he's able to return to work. And this is where we get into... I haven't read all the regulations or read all the cases, but a logical interpretation would be, a logical result consistent with the Act would seem to be that if they decide before you ever get FMLA leave that this isn't the job they want you in, but they want you in some job, that that's what you would get, that's what would arise when you finished your year and became eligible. In fact, there are cases that say that if you lose your position before you become qualified for FMLA leave, but you're on leave at the time, it doesn't turn into a right to return to a position that they've taken away from you. Now, you can say they haven't actually taken it away from him because they haven't filled it yet, but you could also say they have taken it away from him because they've told him they're going to fill it with somebody else. He got his job back on March 19, 2013. Are you complaining, maybe I don't understand the case, I know you're complaining about some money, and I know you're complaining about harassment after, but are you complaining that he didn't get the job back when he was ready to come back? Correct. January 18, when he informed them that he was able to return to work under the Sixth Circuit precedent, Hogue v. Hahn of America, they have to restore him to his position or a substantially equivalent position within two business days. Yes, but aren't they, excuse me, just one fact in here, they are permitted to ask for a statement from his doctor releasing him to come back to work. As long as they put it in the designation notice, which is five days after he becomes eligible for FMLA leave per the regulation. Okay, so the defendants are bad on notice. I'm sorry, Judge White. No, it's just, if I understand it correctly, the problem was, let's break it down into its parts. It was okay for them to fill that position at the time, even if they were doing it permanently because at the time he was not protected. And we can, let me put it like this, we can assume that there will be times when someone's out and they're not protected by the FMLA and there's going to be a job there and the employer is going to fill it. And that's a moment in time. Alright, time moves on and that same employee becomes protected and it's time to come back. So now the employer kind of has to find something roughly equivalent, right? Or does the employer have to go, is it a springing right where they have to now say you have a right to go back to that job that you didn't have when we filled it? Mr. Casagrande, at the time he became eligible, his job was not filled. They could thereafter fill it as long as when he was able to return to work. Let's change the facts. Now we're arguing about when they actually filled it. Let's assume they posted it and filled it before his year. Now after his year, he is now covered by the act. He is now ready to come back. He was neither covered by the act nor ready to come back at the time that they actually filled it. So now, do you agree that they don't have to go and give him that other job back? They may have certain duties to him, but do they have to give him back that job that was filled before he was eligible? The job was posted and filled and there was a legitimate business need to do so. Perhaps. I have not researched that case law because it's not applicable to these facts. They cite a case saying that you don't have to. Let's move forward. So now he's ready to come back and there are substantially similar jobs. There are jobs for him. The issue in this case, as I understand it, is that the employer was simply mistaken. And so instead of taking the kind of conduct, doing the kind of things that the employer would have done, had the employer understood that he was now eligible, the employer is okay, we know you're covered, we have a little problem here, we've already filled the job, we're looking around, we're going to find the substantially equivalent for you, we recognize our duties under the act, that that's not what happened. What happened instead was you're not covered by the act. Is that correct? Right. Until he informed them and provided them the law showing that he was covered by the act. Okay. And when that point came and they finally realized they had made a mistake, then they gave him a position that's consistent with the act, offered him some money, it wasn't enough under the act, and then they moved forward and then you claim he was harassed. Is that correct? Well, there's one, I have to go back, that's the fact that's missing. At some point there's a, he can be required to come in with a statement from his doctor saying he's released to go to work. And he notified him he wanted to come back to work, but then there was a period of time where he didn't bring the statement from his doctor. The act allows an automatic. It has to be. Okay, so the employer is allowed to do it and this employer did do it, said bring us a statement from your doctor that you're released to go back to work. He'd been out of work off and on for what, six months by then. Employer didn't require that. And under the notice requirements, I know you said earlier that there might be some bad notice, but this is the situation that this court had at Wallace v. FedEx where the proximate cause of him not bringing back or bringing a medical certification is because the employer failed to properly follow the regulations and here being telling him that you need to bring back a return to work from your doctor and here are the consequences if you don't. And that's what the regulations require to avoid these situations. They did ask for a statement from the doctor releasing him to come back to work, didn't they? They have generic boilerplate forms that they send that have. In capital letters. Yes, in capital letters, but that's not the designation notice. The designation notice has five days. I understand. They were bad on notice, but he for some reason or another waited a long time before he submitted a statement from his doctor saying he was released to go back to work. Because he didn't have a job to which to return. So he didn't provide notice of his return to work and orally. All right, but let me see if I remember this correctly. In January he says I'm ready to come back to work. And they say fine, bring us a statement from your doctor that you're fit to come to work and we'll find something for you. That's probably where our misunderstanding is Your Honor. They do not say that. They actually tell him wait until you have a position so you can return to work. Otherwise your short term disability will end and you're allowed to stay on the short term disability while you So then it goes on to sometime in February, is that right? Yes, and then in February he does his research on his own because his short term disability pays stops and he's financially struggling. He looks up the regulations realizes that he was entitled to protection, he was entitled to job restoration, provides that But do you know what date he notified them? February 20th, Your Honor. Okay, and so when did they do something in response? He was not put back into his job until March 19th. And why was that delay there? I'm not sure, Your Honor. The record doesn't show? They said that they looked into it. This is a $3 billion company with a team of in-house attorneys and Mr. Casagrande provided them the law and the regulation that specifically states he is eligible for FMLA if he hits the one year mark while on medical leave. Okay, so they learned on the 20th that they had been mistaken and on March 19th they offer him a new job, is that correct? March 12th they called him and offer him his job back because there were still available positions on that floor and his start date is March 19th. He is not offered any compensation for that time period and so he pursues the compensation that he was even offered, but at this point there's a lawsuit, there's been mediation and other work done in the case and at that point if they thought that's all he was entitled to, they should follow the federal rules, Rule 68 and make an offer of judgment. Thank you, Counsel. I see your time is up. Thanks. May it please the court, my name is Manuel Asencio and I represent the Epeliz Ohio Health Corporation and Amy Sayers in this action. I'd like to start by addressing a couple of the issues that were raised with regard to appellant's interference claim and it involves, as the court has recognized in its questions, two issues concerning job restoration. I don't believe that there is any question that under FEMLA the appellant received all leave to which he was entitled to at any point in time and under any interpretation of the act that might be applied. The claim for FEMLA interference relates to two instances in time, the first being January of 2013 when appellant presented himself and said that he desired to come back to work at Ohio Health. What date was that again? That was I believe the 18th of January. At that point in time the record does reveal that he was specifically told that he needed to provide a return to work certificate. I know there's been some discussion about the return to work certificate. I would suggest that the reading of the regulations with regard to the designation notice of plaintiff's leave as presented by opposing counsel is not accurate. The designation notice that's required to be provided under the act is required to be provided when the leave begins, not at the point in time that he became eligible for FEMLA leave. And as the court I think has recognized, he started the leave that was at issue in early November of 2012, specifically on November 2nd. On November 5th he was provided with a designation notice by Ohio Health which told him that his family medical leave request was being denied because at that point in time he had not served one year at Ohio Health in his employment and was not therefore eligible. That notice went on to provide in two different places that he was required to provide a return to work certificate at the time that he came back to his job. So it's our contention that there's no question that the return to work certificate was appropriately required in this case. But he's saying that you also told him don't do it now because there's no job for you. Well, to be clear, in addition to the November 5 designation notice that was provided and that's part of the record that says that he was required to provide a return to work certificate, he was told on two other occasions before the end of 2012 that he needed to provide the return to work certificate. The first was in November when his request for disability pay, the 70% pay, was approved. He was told at that point in time that he would have to provide a return to work certificate. He was also told... What does that have to do with what I just asked? Well, just because he was told several times that he was told that he needed to provide the return to work certificate. No, but if somebody goes and says, okay, I'm ready to work. I'm going to bring in my certificate or whatever. And they go, well, don't do that now because we don't have a job for you and it's going to mess up your benefits. How does that relate to whatever you're saying about the fact that he knew he had to bring it? He was told not to. Your Honor, Appellant admitted during his deposition that the individual who allegedly told him that also told him that you have to provide a return to work certificate before you come back. Yes. Then, I'm sorry, I maybe don't understand the facts. My understanding is that when he first was ready to come back in January, he was told, don't bring the certificate because we don't have a job. That's what he alleges he was told. He also admitted that the same individual told him... Okay, let's assume that. Don't bring your certificate because we don't have a job. When we do have a job, you will have to bring your certificate. Is that fair? I believe that's what he alleges, yes. Okay. So, am I mistaken that in February when he figures it out, he does give you a certificate, doesn't he? He does on February 27th. Okay. And you don't bring him back until the end of March? Shortly before providing us the return to work certificate on February 27th, he had extended his leave with a note from his doctor, and this happened in February within a week or two of the 27th. He had extended his leave from March 1 to April 20. So, on the one hand, we had notice from his doctor that he needed to be off until April 20, and then within a week, we were told that he was able to come back on the 27th. Well, sometimes things happen, and it's surprising, but the last thing you got was the certificate. That's right. But at that point, you were still saying you're not covered, right? At that point, we were trying to determine whether he was covered. We made a mistake, Your Honor. Okay. But that's the point. You did make a mistake. It's not simply that you said we don't know if you're covered. You told him he wasn't covered, right? Prior to that, we had, Your Honor. Okay. So, let's say he was covered and you knew he was covered. Wouldn't he have gone back to work earlier? He could have been reinstated as soon as the 27th once he provided the return-to-work certificate from his physician. Okay. So, then why are we arguing about whether or not he has an interference claim? Because he was compensated for the time which it took to return him to his position, the period of time from the 27th of February through March 19. Therefore, he suffered no harm. It doesn't... No. That doesn't mean he doesn't have a claim. Maybe you've already given him what he's entitled to, but he had a claim. Can we agree that he had a claim? Well, with all due respect, Your Honor, I think under this Court's ruling at Edgar, which requires that the plaintiffs suffer harm in order to show a claim of interference, it is our position that he would not have a valid claim at that point. Well, he was out of work and you didn't pay him until June. So, I mean, I don't think... Okay. I mean, that could be your defense that he... But I think you're going further than that, right? I mean, you do recognize that they're saying you did not give him all the money he was entitled to, right? That is newly raised on appeal. That was never an issue that was before the Court below. Yes. It's there, but it's pretty small. I thought the whole issue in this case was retaliation. Right. And he has that claim, too. What about the retaliation claim? That's the concern. The retaliation claim, he relies almost exclusively on testimony of two coworkers, Ms. Pappas and Ms. Flutie, which the Court ruled below was hearsay. Neither one of those individuals worked on the same shift as his manager or had any opportunity to observe his manager's treatment of appellant or of any other coworkers. What if we conclude, just to cut to the chase, what if we conclude that that's not hearsay? Does that mean there has to be a trial on retaliation? Your Honor, I would suggest that there's still the issue of temporal proximity and that we've got an issue where it was 11 months, 10 to 11 months from the time that he went on FEMA or became eligible from FEMA until he was ultimately terminated. And beyond that, it was also a question of 7 months. What is that saying? If you have temporal, if you lack temporal proximity, I love these words, and you have some evidence that this termination resulted from FMLA leave for maintaining his FMLA rights, that he loses? I mean, doesn't that mean you then go to the jury if you have some testimony and you have the lack of temporal proximity? You don't have to show something by temporal proximity, do you? That's not a requirement. What the district court ruled was that at that point in time, giving him the benefit of the doubt, he would have established a prima facie case of retaliation. I think it's pretty clear from the court's analysis of the pretext issue that summary judgment would still be appropriate because we had a legitimate non-retaliatory reason for the termination. I understand that you had a legitimate reason. My concern is for the pretext. And I understood the district court to say your opponent lost on pretext because the only evidence was hearsay. Well, it's not only that. So if we assume that there is evidence that wasn't hearsay, then what? Then you can't go back to what the district court said because the district court assumed it was hearsay, right? Well, we can also go back and look at, in essence, what the argument is, is that he's arguing, Appellant is arguing that he's treated less favorably than other similarly situated individuals. However, the only evidence in the record with regard to treatment of other similarly situated individuals is a termination of three other individuals, none of whom took a FMLA leave, none of whom exercised FMLA rights for the same reasons. Oh, when you did pretext, you looked at whether the reason given would have, whatever, wasn't the real reason. Isn't that one of the Manser possibilities? Under Seeger, that's one of the ways you can show pretext. Yeah, isn't that the argument, that this, instead they were lying in wait to try to catch him on little, that was the testimony, right? That's the allegation. Other than the testimony of these two individuals, there's no evidence in support. No, but I'm asking, pardon me, I'm asking, what if you have that evidence and include it and don't exclude it? That's my hypothetical. Do you have any answer to that or is that the end of your retaliation case? If you just say, that's where we hang it, then we'll just decide whether it was hearsay and if it was not, you'll get reversed. Is there anything that will keep you from getting reversed if we assume that it was not hearsay? Yes, Your Honor. What? That is the nature of the testimony itself. The nature of the testimony does not, in fact, it's opinion testimony that does not show that he was treated less favorably than other individuals. It doesn't show that he was, in fact, retaliated against. That would be our position with regard to the testimony. So even if it's admitted and even if it is considered, it is insufficient. It doesn't show any relation to FMLA leaves, is that the idea? That's part of it. It shows that they were looking carefully at him. Yes. They might have been looking carefully at him for various reasons. They might have been looking carefully at him because it's a hospital and we have important patient safety issues at stake. And they'd already decided to replace him before FMLA leaves started. Your Honor, I think the evidence that came in through those two individuals would be incomplete for purposes of establishing an inference of retaliation here. So the position is there may have been certain incidences, but they were related to like when Pappas was asked to keep an eye on him to make sure he didn't do, you know, to let me know if he does anything wrong. That had nothing to do with retaliation. No, Your Honor, it did not. Okay. You're not denying it happened. You're saying it's because we wanted to make sure he was doing a good job. No, I think that we're, from time to time, because Pelly Sayers supervised individuals on different shifts, she had to rely on reports from people that actually worked on those shifts as to what was going on on the shift. And from a patient care perspective, it certainly made sense that she would ask people about different issues that were reported to her. Okay. Further questions? Anything else? No, Your Honor. For those reasons, we respectfully request that the lower court decision be affirmed. Thank you, counsel. Rebuttal. Very quickly on the interference, I just want to direct the court to CFR 825.300 D5. And this negates what counsel just said about the only time a designation notice is required is at the time you go on leave. This says that if any circumstance changes, in other words, you're now entitled to leave or protection under the Act, or you're now not, you need to provide due notice. And they failed to do that. And so Mr. Casagrande's understanding, until he did his own research, is that he was not protected by the Act and not entitled to job restoration. But, okay, but does that have to do with the fitness for duty upon return? Yes. They have to tell him at that point he is qualified for FMLA leave and that to return from FMLA leave, he's required to provide a fitness for duty certification and the consequences that come if he does not, which would be a delay in job restoration. And the Department of Labor has a form for this, WH. How does that relate to your claim that he was told not to do it because there wasn't a job? When he came back in January, he didn't have an understanding that he was entitled to a job or any restoration. He was, let's look for jobs and let's start applying. At that point, was he told not to submit the fitness for duty form? Correct. Okay, so what, I'm missing the point. If he, what does the notice have to do with it? If he knew that he needed it and the reason he didn't submit it then was that he was told not to because there was no job and he later submitted it when he realized he had a right to a job, what does the notice have to do with it? The medical certification requirement is only triggered if there's proper and timely designation notice telling him he's qualified for FMLA leave, that in order to return, he needs to provide a medical certification, and if he doesn't, then he will have a delay in job restoration. And so it's an additional argument. Okay. I do want to address the retaliation claim. The lower court said that one comment was hearsay, that a comment that Ms., it was Ms. Flutie and Ms. Pappas, that one of them heard from another individual that Ms. Sayers said that she wants Casa Grande gone. That was hearsay. The other comments, the court determined under CLAC v. ROC-10, that these were not comments made by the decision maker. In that case, dealt with whether a supervisor who had a racial animus but was not involved in the decision making process, those comments can be attributed to it and it's just not applicable whatsoever. Okay. Well, did she, I do have a question, I'm sorry. You have this continuing dialogue going on regarding the FLMA and the entitlement. That wasn't with her, right? With Ms. Sayers? Yeah. No. No, it was with other people. I'm sorry, it was. There were combinations. There were letters that were sent from Ms. Sayers as well about the entitlement to FMLA. Okay. Okay, never mind. Can I make one closing remark? Thirty seconds. Ms. Flutie was a charge nurse who worked with Mr. Casa Grande on the night and weekend shift. She said that in seven years, she had never been approached by Ms. Sayers, who she had worked for for seven years, and asked and solicited to give reasons on why any employee wasn't performing their job, that she continually did it, that Ms. Sayers continually did it where she felt very pressured, that she just wanted any sort of statement so she can have something to write them up. And that's the definition of pretext. Thank you, Counsel. I don't want to beat a dead horse, but if the parties decide after argument today that it might be fruitful to try settlement efforts again, would you let us know or would you go ahead and contact the Mediation Office? I'm still of a mind that this is a case with limited damages that you all ought to be able to settle. I know it's gotten now into a big record, but all of it could be liquidated to some figure. So just if you'd keep that in mind, I personally would appreciate it. Excuse me, Judge, is there a deadline for them to? No. Not unless the presiding judge wishes. This is just me speaking, not the court speaking. It's a good idea if you would like to contact the mediation or if the mediation contacts you. If there's any developments, the Mediation Office will contact us and we can take that into account.